IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CONNIE BENNETT & DONALD BENNETT,

    Plaintiffs,

v.                     Civil Action No. 2:13-cv-06641

BOSTON SCIENTIFIC CORP.,

    Defendant.

MEMORANDUM OPINION AND ORDER
*(Defendant's Motion for Summary Judgment)*

Pending before the court is Defendant Boston Scientific Corp.'s ("BSC") Motion for Summary Judgment and Memorandum in Support Against Plaintiffs Connie and Donald Bennett ("Motion") [Docket 67]. As set forth below, BSC's Motion is **GRANTED IN PART** with respect to the plaintiffs' claims of strict liability for manufacturing defect, strict liability for failure to warn, negligent manufacturing, negligent failure to warn, breach of implied warranty of fitness for a particular purpose, and fraudulent concealment. BSC's Motion is **DENIED IN PART** with respect to the plaintiffs' claims of breach of express warranty and breach of implied warranty of merchantability.

**I.  Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific

Corp. MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions and summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The Bennetts' case was selected as a Wave 1 case by the plaintiffs.

Plaintiff Connie Bennett was surgically implanted with the Obtryx Transobturator Mid-Urethral Sling System (the "Obtryx") on August 15, 2008. (Short Form Compl. [Docket 1] ¶¶ 8, 10). She received the surgery at a hospital in Weston, West Virginia. (*Id.* ¶ 11). Her implanting surgeon was Dr. Peter Edgerton. (*Id.* ¶ 12). Ms. Bennett claims that as a result of implantation of the Obtryx, she has experienced multiple complications, including "urinary tract infections; urinary problems; bowel problems; bleeding; dyspareunia; emotional distress; extreme pelvic abdominal pain and tenderness; back pain and leg pain." (First Am. Pl. Fact Sheet [Docket 67-10], at 6–7). She brings the following claims against BSC: strict liability for manufacturing defect, failure to warn, and design defect; negligence; breaches of express and implied warranties; fraudulent concealment; and punitive damages. (Short Form Compl. [Docket 1] ¶ 13). Mr. Bennett brings a claim for loss of consortium. (*Id.*).

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply

the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as the Bennetts did in this case, I consult the choice-of-law rules of the state in which the implantation surgery took place. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Bennett received her implantation surgery in West Virginia. (Short Form Compl. [Docket 1] ¶ 11). Thus, the choice-of-law principles of West Virginia guide this court's choice-of-law analysis.

In West Virginia, the applicable substantive law is the law of the place of injury. *McKinney v. Fairchild Int'l, Inc.*, 487 S.E.2d 913, 922 (W. Va. 1997) ("Traditionally, West Virginia courts apply the *lex loci delicti* choice-of-law rule; that is, the substantive rights

4

between the parties are determined by the law of the place of injury."). West Virginia courts have deviated from this rule only in occasions of "particularly thorny conflicts problems," including "complex, or unusual, contractual situations . . . and torts which very existence are dependent upon the brea[d]th and legality of contracts." *Ball v. Joy Mfg. Co.*, 755 F. Supp. 1344, 1351 (S.D. W. Va. 1990) (quoting *Oaks v. Oxygen Therapy Servs.*, 363 S.E.2d 130, 131 (W. Va. 1987)). These MDLs do not raise such conflicts-of-law issues, and so I see no reason to depart from West Virginia's traditional principles.

Here, the alleged injury occurred in West Virginia, where Ms. Bennett was implanted with the allegedly defective device. (*See* Short Form Compl. [Docket 1] ¶¶ 11, 13). Thus, I apply West Virginia's substantive law to this case.

### III. Analysis

#### A. Strict Liability

For purposes of strict products liability, "a defective product may fall into three broad, and not mutually exclusive, categories: design defectiveness; structural defectiveness; and use defectiveness arising out of the lack of, or the adequacy of, warnings, instructions, and labels." *Morningstar v. Black & Decker Mfg. Co.*, 253 S.E.2d 666, 682 (W. Va. 1979). In this case, BSC has moved for summary judgment on manufacturing defect and failure to warn.

##### 1. Manufacturing Defect

The plaintiffs concede the issue of strict liability for manufacturing defect. (Pl.'s Mem. of Law in Opp'n to BSC's Mot. for Summ. J. ("Mem. in Opp'n") [Docket 78], at 1 n.1). Accordingly, BSC's Motion on the plaintiffs' claim of strict liability for manufacturing defect is **GRANTED**.

### 2. Failure to Warn

A defect arising from failure to warn "covers situations when a product may be safe as designed and manufactured," but then "becomes defective because of the failure to warn of dangers which may be present when the product is used in a particular manner." *Ilosky v. Michelin Tire Corp.*, 307 S.E.2d 603, 609 (W. Va. 1983). To substantiate a failure to warn claim under strict liability, the plaintiff must show that the failure to adequately warn "made the product not reasonably safe" and "that the defect was the probable cause of her injuries." *Id.* at 610.

Many courts have adopted the learned intermediary doctrine, which provides that the proper recipient of adequate warnings in medical contexts is the prescribing physician or healthcare provider—"a learned intermediary between the manufacturer and the ultimate consumer [who] assumes responsibility for advising individual patients of the risks associated" with the product. *State ex rel. Johnson & Johnson Corp. v. Karl*, 647 S.E.2d 899, 902–03 (W. Va. 2007) (quoting *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 803 (E.D. Tex. 2002)) (internal quotation marks omitted).

Although the Supreme Court of Appeals of West Virginia has refused to adopt the learned intermediary doctrine, *see Karl*, 647 S.E.2d at 914, in *Tyree v. Boston Scientific Corp.*, No. 2:12-cv-08633, --- F. Supp. 3d ---, 2014 WL 5431993, at *3 (S.D. W. Va. Oct. 23, 2014), I concluded that *Karl* expressly barred the learned intermediary doctrine only in prescription pharmaceutical cases involving direct-to-consumer advertising. The learned intermediary doctrine would apply, however, in cases involving medical devices that do not involve direct-to-consumer advertising, such as in the instant case. *See id.* at *5.

Here, there is no evidence that Dr. Edgerton, the implanting physician, would have taken a different course of action even if he had been given an adequate warning.[1] Without any indication that he would not have implanted the product had he been given such a warning, the plaintiffs cannot establish proximate causation. Therefore, BSC's Motion on the plaintiffs' claim of strict liability for failure to warn is **GRANTED**.

### B.   Negligence

In a negligence suit, the plaintiff must establish (1) duty; (2) breach of duty; (3) causation; and (4) damages. *See Hersh v. E-T Enters., Ltd.*, 752 S.E.2d 336, 341 (W. Va. 2013). "To prevail in a negligence suit, the plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff." *Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004). In the present case, the plaintiffs' negligence claims fall into the same three categories as her strict liability claims: (1) negligent manufacturing; (2) negligent design; (3) and negligent warning. (*See* Master Long Form Compl. & Jury Demand, MDL No. 2326, ¶¶ 55–59; Short Form Compl. [Docket 1] ¶ 13); In this case, BSC has moved for summary judgment on negligent manufacturing and negligent failure to warn.

### 1.   Negligent Manufacturing

The plaintiffs concede the issue of negligent manufacturing. (Mem. in Opp'n [Docket 78], at 1 n.1). Accordingly, BSC's Motion on the plaintiffs' claim of negligent manufacturing is **GRANTED**.

---

[1] I note that in BSC's excerpt of Dr. Edgerton's deposition [Docket 67-4], the pages are completely out of order: page 116, then page 55, page 97, page 344, page 54, page 56, page 40, and so on. I also note that BSC's excerpt appears to combine Dr. Edgerton's two depositions into one, and I am unable to tell reliably whether a particular page is from a particular deposition. As I previously noted in *Sanchez v. Boston Scientific Corp.*, 38 F. Supp. 3d 727, 735 n.1 (S.D. W. Va. 2014), organizing pages in such a manner is "frustrating," and it is manifestly unhelpful to the court. It is a waste of valuable judicial resources to spend time reorganizing pages. I admonish all parties to organize pages in numerical order.

### 2. Negligent Failure to Warn

As explained earlier, there is no evidence that Dr. Edgerton would have taken a different course of action even if he had been given an adequate warning. Without a statement that he would not have implanted the product had he been given such a warning, the plaintiffs cannot establish proximate causation. *See supra* Part III.A.2. Therefore, BSC's Motion on the plaintiffs' claim of negligent failure to warn is **GRANTED**.

### C. Breach of Express Warranty

Section 46-2-313 of the West Virginia Code provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." W. Va. Code § 46-2-313(1)(a). To succeed on a breach of express warranty claim, "a plaintiff must show the existence of an express warranty, breach of the express warranty, and damages proximately caused by the breach." *Michael v. Wyeth, LLC*, No. 2:04-0435, 2011 WL 2150112, at *7 (S.D. W. Va. May 25, 2011) (internal quotations omitted). In addition, a plaintiff need not herself rely on any statements made by the manufacturer; rather, she must show that she received communications from her doctor and that her doctor received communications from the manufacturer: a presumption arises that the affirmations communicated by the manufacturer were at least part of the "basis of the bargain" that led the plaintiff to receive the medical device. *See Michael*, 2011 WL 2150112, at *8–9; *see also* W. Va. Code § 46A-6-108 (abolishing vertical privity); *id.* § 46-2-313 cmt. para. 3 ("[N]o particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof.").

Here, there is a genuine dispute of material fact as to whether an express warranty exists and formed the basis of the bargain. Therefore, BSC's Motion on the plaintiffs' claim of breach of express warranty is **DENIED**.

### D. Breach of Implied Warranties

West Virginia law provides for two types of implied warranties: (1) the implied warranty of merchantability and (2) the implied warranty of fitness for a particular purpose. *See* §§ W. Va. Code 46-2-314, 46-2-315.

#### 1. Implied Warranty of Merchantability

In West Virginia, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." W. Va. Code § 46-2-314(1). Importantly, for goods to be merchantable, they must be "fit for the ordinary purposes for which such goods are used." *Id.* § 46-2-314(2)(c). In addition, disclaimers of warranty are invalid in a torts products-liability context. *See Morningstar*, 253 S.E.2d at 679 ("[U]nder tort product liability law there can be no disclaimer limitation . . . .").

Here, there is a genuine dispute of material fact as to whether the mesh product suffers from a defect, thus rendering it not fit for its ordinary purpose and consequently not merchantable. Therefore, BSC's Motion on the plaintiffs' claim of breach of implied warranty of merchantability is **DENIED**.

#### 2. Implied Warranty of Fitness for a Particular Purpose

The plaintiffs concede the issue of breach of implied warranty of fitness for a particular purpose. (Mem. in Opp'n [Docket 78], at 1 n.1). Accordingly, BSC's Motion on the plaintiffs' claim of breach of implied warranty of fitness for a particular purpose is **GRANTED**.

### E. Fraudulent Concealment

The plaintiffs concede the issue of fraudulent concealment. (Mem. in Opp'n [Docket 78], at 1 n.1). Therefore, to the extent that the plaintiffs intended to bring a separate claim of fraudulent concealment, BSC's Motion regarding that claim is **GRANTED**.[2]

## IV. Conclusion

For the reasons discussed above, it is **ORDERED** that BSC's Motion for Summary Judgment [Docket 67] be **GRANTED IN PART** with respect to the plaintiffs' claims of strict liability for manufacturing defect, strict liability for failure to warn, negligent manufacturing, negligent failure to warn, breach of implied warranty of fitness for a particular purpose, and fraudulent concealment, and **DENIED IN PART** with respect to the plaintiffs' claims of breach of express warranty and breach of implied warranty of merchantability. Consequently, the claims that remain in this matter are (1) strict liability for design defect; (2) negligent design; (3) breach of express warranty; (4) breach of implied warranty of merchantability; and (5) loss of consortium.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTERED: May 5, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[2] This holding is limited to the independent claim of fraudulent concealment. In the event that future issues arise concerning fraudulent concealment as it relates to the statute of limitations, the court will review such arguments anew.